1   DONALD W. SEARLES, Cal. Bar No. 135705
    Email: searlesd@sec.gov
2   KRISTIN S. ESCALANTE (Cal. Bar No. 169635)
    Email: escalantek@sec.gov
3   JUNLING MA (Cal. Bar No.213241)
    Email: maj@sec.gov
4   BENJAMIN FAULKNER (Cal. Bar No. 282181)
    Email: faulknerb@sec.gov

5

6   Attorneys for Plaintiff
    Securities and Exchange Commission
7   Michele Wein Layne, Regional Director
    John W. Berry, Associate Regional Director
8   Amy Longo, Regional Trial Counsel
    444 S. Flower Street, Suite 900
9   Los Angeles, California 90071
    Telephone: (323) 965-3998
10  Facsimile: (213) 443-1904

**ORIGINAL**

```
FILED
CLERK, U.S. DISTRICT COURT

9/20/17

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ER _____ DEPUTY
```

LODGED
CLERK, U.S. DISTRICT COURT
SEP 2 0 2017
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**CV 17-06929-PA(JEMx)**

15  SECURITIES AND EXCHANGE
    COMMISSION,                       Case No.

16              Plaintiff,

17                                     **COMPLAINT**

18        vs.                          **(FILED UNDER SEAL)**

19  EDWARD CHEN, JEAN CHEN,
    HOME PARADISE INVESTMENT
20  CENTER LLC, GH INVESTMENT
    LP, GH DESIGN GROUP, LLC,
21  GOLDEN GALAXY LP, AND MEGA
    HOME, LLC,

22

23              Defendants.

24

25

26

27

28

COMPLAINT

DONALD W. SEARLES, Cal. Bar No. 135705
Email: searlesd@sec.gov
KRISTIN S. ESCALANTE (Cal. Bar No. 169635)
Email: escalantek@sec.gov
JUNLING MA (Cal. Bar No.213241)
Email: maj@sec.gov
BENJAMIN FAULKNER (Cal. Bar No. 282181)
Email: faulknerb@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
John W. Berry, Associate Regional Director
Amy Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

LODGED
CLERK, U.S. DISTRICT COURT

SEP 2 0 2017

DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | **CV 17 -06929 - PA (JEMx)** Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | **(FILED UNDER SEAL)** |
| EDWARD CHEN, JEAN CHEN, HOME PARADISE INVESTMENT CENTER LLC, GH INVESTMENT LP, GH DESIGN GROUP, LLC, GOLDEN GALAXY LP, AND MEGA HOME, LLC, | |
| Defendants. | |

COMPLAINT

1   Plaintiff Securities and Exchange Commission ("SEC") alleges:

2   **JURISDICTION AND VENUE**

3   1.      The Court has jurisdiction over this action pursuant to Sections 20(b),

4   20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§

5   77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the

6   Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1),

7   78u(d)(3)(A), 78u(e) & 78aa(a).  Defendants have, directly or indirectly, made use of

8   the means or instrumentalities of interstate commerce, of the mails, or of the facilities

9   of a national securities exchange in connection with the transactions, acts, practices

10  and courses of business alleged in this Complaint.

11  2.      Venue is proper in this district pursuant to Section 22(a) of the Securities

12  Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a),

13  because certain of the transactions, acts, practices and courses of conduct constituting

14  violations of the federal securities laws occurred within this district.  In addition,

15  venue is proper in this district because all of the defendants reside in this district.

16  **SUMMARY**

17  1.      This matter concerns two fraudulent securities offerings carried out by

18  Edward Chen, his wife, Jean Chen, and several entities they control.  In doing so,

19  they have misappropriated millions of dollars of investor money, much of it in cash

20  and cashier's checks.

21  2.      The Chens offered and sold securities in two projects under the federal

22  EB-5 immigration program administered by the United States Citizenship and

23  Immigration Services ("USCIS"), which allows foreign investors to apply for green

24  cards as long as their investments meet certain criteria under the program.  Home

25  Paradise Investment Center LLC ("Home Paradise"), an entity controlled by Edward

26  Chen, is the "regional center" designated by USCIS to sponsor these EB-5 offerings.

27  3.      As of April 2017, Home Paradise has raised over $22.5 million from 45

28

1  investors in two offerings:  (1) a $9.5 million offering by GH Investment LP ("GH
2  Investment"), which was supposed to invest in the development, renovation and
3  operation of an interior design center in Ontario, California; and (2) a $13 million
4  offering by Golden Galaxy LP ("Golden Galaxy"), to invest in a five-floor, 80-unit
5  condominium project in Los Angeles, California.  Home Paradise continues to
6  promote these two projects on the Chinese language website of its Chinese affiliate
7  aimed at investors in China.

8      4.    The Chens' misappropriation of investor money has been staggering.
9  On the GH Investment offering alone, the defendants misappropriated at least $8.6
10  million, more than 91% of the approximately $9.5 million raised.  In doing so, they:
11  (1) diverted millions of dollars to fund the Chens' purchase of residential real estate;
12  (2) transferred investor money to Chen-controlled entities; and/or (3) withdrew
13  investor funds in cash and to purchase cashier's checks in Jean Chen's name.  The
14  offering proceeds were supposed to be used to develop and operate a design center,
15  but no center is being renovated or operated; in fact, Home Paradise has done little
16  more than rent space in a half empty warehouse.  And the Chens misled investors
17  (and the USCIS) about the size of that space, the square footage of which was a
18  critical component to the estimated number of new jobs the project would support.  A
19  doctored lease for the warehouse, signed by Edward Chen, on behalf of GH Design,
20  as the lessee, was provided to investors and submitted to the USCIS.  This fake lease
21  vastly overstated the warehouse's size and monthly rent, and replaced the name of the
22  true lessor with Four Star Realty Group, an entity controlled by Jean Chen, which
23  received approximately $3.7 million of investors' money.

24      5.    The Chens have similarly misappropriated investor funds on the Golden
25  Galaxy offering.  Of the approximately $13 million raised to date for the Golden
26  Galaxy offering, about $3.5 million was diverted to the Chens in the form of cashier's
27  checks to Jean Chen that she has used toward the purchase of residential real
28  property, taken in cash, or transferred to other Chen-controlled entities.

COMPLAINT                        2

1    Approximately $2.7 million of Golden Galaxy investor funds has not been spent yet.

2          6.    Of the funds raised to date between the two EB-5 offerings, the Chens

3    have misused and/or misappropriated approximately $12.1 million.  In addition,

4    there are millions of dollars of investor funds still under the Chens' control.  Given

5    their past conduct, there is every reason to believe that the Chens, unless immediately

6    enjoined, will continue to misuse and misappropriate investor funds.

7          7.    By engaging in this conduct, the defendants have violated, and continue

8    to violate, the antifraud provisions of Sections 17(a)(1), (2) & (3) of the Securities

9    Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b),

10   and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. 240.10b-5(a) & 240.10b-5(c), and

11   defendants Edward Chen, Home Paradise, GH Investment and Golden Galaxy have

12   violated, and continue to violate Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-

13   5(b).

14                     **THE DEFENDANTS**

15         8.    **Edward Chen**, a/k/a Jianqiao Chen, Jian Qiao Chen, and Jian Chen, age

16   49, is a resident of Arcadia, California and the husband of defendant Jean Chen.

17   Edward Chen is the chief executive officer ("CEO"), sole or managing member and

18   president of defendant Home Paradise Investment Center LLC, which is the general

19   partner of defendants GH Investment LP and Golden Galaxy LP.

20         9.    **Jean Chen**, a/k/a Jing Jiang and Jean Jiang, age 48, is a resident of

21   Arcadia, California and the wife of defendant Edward Chen.  Jean Chen is the

22   managing member of defendant Mega Home, LLC.  Jean Chen also owns, directly

23   and indirectly through Four Star Realty Group Inc., 50% of Mega Home.

24         10.    **Home Paradise Investment Center LLC** ("Home Paradise") is a

25   California limited liability corporation with its principal place of business in

26   Commerce, California.  Home Paradise is a "Regional Center" designated by the

27   USCIS.  Edward Chen is the CEO, sole member, and president/manager of Home

28   Paradise.

11. **GH Investment LP** ("GH Investment") is a California limited partnership with its principal place of business in Ontario, California. Home Paradise is its general partner. GH Investment is the issuer that loans investor proceeds to GH Design Group, LLC.

12. **GH Design Group, LLC** ("GH Design") is a California limited liability corporation with its principal place of business in Ontario, California. GH Design is the EB-5 project company purportedly funded by GH Investment for the home design center project. Edward Chen is the CEO and president/manager of GH Design.

13. **Golden Galaxy LP** ("Golden Galaxy") is a California limited partnership with its principal place of business in Los Angeles, California. Home Paradise is its general partner. Golden Galaxy is the issuer that invests the investor proceeds with Mega Home, LLC in the form of preferred equity.

14. **Mega Home, LLC** ("Mega Home") is a California limited liability corporation with its principal place of business in Commerce, California. Mega Home is the EB-5 project company, purportedly funded by Golden Galaxy, for the condominium project. Jean Chen owns, directly and indirectly through Four Star Realty Group Inc., 50% of Mega Home and is its managing member.

## AFFLIATED ENTITIES

15. The following entities are controlled by either Edward Chen and/or Jean Chen and have received investor funds from the accounts of defendants GH Design and/or Mega Home:

16. **Four Star Realty Group Inc.** ("Four Star") is a California corporation with its principal place of business in Arcadia, California. It is purportedly a real estate development company. Jean Chen is its CEO, Secretary, CFO, sole director, and agent for service of process. It is the "lessor" in GH Design's fabricated lease for the warehouse, and received investor money from the GH Investment offering

17. **Home Paradises LLC** is a California limited liability corporation with its principal place of business in Commerce, California. It is purportedly a

1  construction company and the general contractor for Mega Home.  Edward Chen is

2  its CEO, manager and agent for service of process.  Home Paradises LLC received

3  investor money from both the GH Investment and Golden Galaxy offerings.

4        18.   **US Grandhood, LLC** ("US Grandhood") is a California limited liability

5  corporation with its principal place of business in Commerce, California.  Jean Chen

6  is its manager, sole member and agent for service of process.  US Grandhood, LLC

7  received investor money from both the GH Investment and Golden Galaxy offerings.

8        19.   **First Financial Investment Group, LLC** ("First Financial") is a

9  California limited liability corporation with its principal place of business in

10  Commerce, California.  Edward Chen is its managing manager and agent for service

11  of process.  Jean Chen purchased real property in First Financial's name using

12  investor money from both the GH Investment and the Golden Galaxy offerings.

13                              **THE ALLEGATIONS**

14        20.   From June 2014 through the present, defendants raised at least $22.5

15  million from 45 investors participating in two EB-5 projects sponsored by the Home

16  Paradise regional center.  The first project, financed by GH Investment and operated

17  by GH Design Group, purportedly involves the development and operation of an

18  interior design center in Ontario, California.  The second project, financed by Golden

19  Galaxy and operated by Mega Home, involves the development, construction, and

20  operation of an 80-unit condominium complex in Los Angeles, California.

21        **A.    The EB-5 Immigrant Investor Program**

22        21.   The federal EB-5 Immigrant Investor Program sets aside EB-5 visas for

23  participants who invest in commercial enterprises associated with regional centers

24  approved by the USCIS based on proposals for promoting economic growth.

25        22.   Under the EB-5 Immigrant Investor Program, foreign investors who

26  invest capital in a "commercial enterprise" in the United States may petition the

27  USCIS (called an "I-526 Petition") and receive conditional permanent residency

28  status for a two-year period.  USCIS defines a "commercial enterprise" as any for-

1 profit activity formed for the ongoing conduct of lawful business.

2      23.    The regulations governing the EB-5 Immigrant Investor Program require
3 a showing that the foreign investor has placed the required amount of capital at risk
4 for "the purpose of generating a return" on the capital placed at risk.  C.F.R. §
5 204.6(j)(2).  The foreign investor must invest at least $500,000 in a "Targeted
6 Employment Area" and thereby create at least ten full-time jobs for United States
7 workers.  If the foreign investor satisfies these and other conditions within the two-
8 year period, the foreign investor may apply to have the conditions removed from his
9 or her visa and live and work in the United States permanently.

10     24.    Many EB-5 investments are administered by entities called "regional
11 centers."  EB-5 regional centers are designated by USCIS to administer the EB-5
12 investment projects based on proposals for promoting economic growth.

13     25.    Regional center investment vehicles are typically offered as limited
14 partnership interests or limited liability company units, which are managed by a
15 person or entity other than the foreign investor, who acts as a general partner or
16 managing member of the investment vehicle.  To become a regional center, the entity
17 must demonstrate, with supporting economic and statistical studies, how it will
18 promote economic growth, including job creation.

19     26.    As of September 23, 2011, the USCIS had designated Home Paradise as
20 an approved "regional center" that can sponsor EB-5 projects.

21     27.    For each of the GH Investment and Golden Galaxy projects, Home
22 Paradise submitted an application on Form I-924 seeking the USCIS's approval.
23 These applications attached various documents, including offering memoranda,
24 business plans, economic impact analyses, limited partnership agreements, and
25 subscription agreements.

26     28.    As a regional center, Home Paradise is required to annually certify to the
27 USCIS its continued compliance with the EB-5 program, including its compliance
28 with the program's requirements regarding the use of proceeds and job creation.

1     **B.**     **The GH Design Offering**

2         29.     From June 2014 through November 2015, Edward Chen, Home Paradise

3 and GH Investment raised at least $9.5 million from 19 Chinese investors through the

4 sale of limited partnership interests in GH Investment for an interior design center

5 project.

6         30.     GH Investment lent the investor proceeds to GH Design at an annual

7 interest rate of 1% per year for GH Design's development and construction of the

8 interior design center project.

9         31.     GH Investment's limited partners may, in the partnership's sole

10 discretion, receive distributions based on its revenues, which, according to GH

11 Investment's limited partnership agreement and confidential private offering

12 memorandum ("POM"), are derived primarily from the loan to GH Design. GH

13 Investment's limited partnership agreement provides that limited partners are to be

14 paid distributions before Home Paradise, the general partner.

15         32.     Each investor wired a $500,000 capital contribution as an investment

16 into GH Investment's bank account in the United States, where the monies were

17 pooled with other GH Investment investors' monies.

18         33.     According to the POM, investor funds would be released to GH Design

19 upon the filing of an I-526 petition with USCIS for temporary residency. As of

20 February 2016, all of those investments had been released to GH Design.

21         34.     GH Investment also collected approximately $45,000 in administrative

22 fees from each investor. Under GH Investment's limited partnership agreement,

23 Home Paradise, as the general partner, may use the administrative fees for

24 compensation, organizational, operational and marketing expenses.

25         35.     As part of the offering, prospective investors were provided with the

26 following documents, which are included in the investors' visa applications submitted

27 to the USCIS: (a) a GH Investment POM; (b) a business plan for the interior design

28 center project; (c) an economic impact analysis report; (d) a subscription booklet,

1  including a subscription agreement signed by each investor and Edward Chen; (e) the

2  GH Investment Limited Partnership Agreement; and (f) the loan agreement between

3  GH Investment and GH Design.

4      36.    The GH Investment offering materials, including the POM, the

5  subscription agreements, and the limited partnership agreement, reflect that the

6  limited partnership interests are securities, that is, an investment of money, in a

7  common enterprise, with the expectation of profits derived solely through the effort

8  of others. Indeed, the limited partnership agreement states that no limited partner

9  would be involved in the day-to-day management of the business.

10      37.    The GH Investment offering documents state that the investor's capital

11  contribution is to be used to develop, renovate and operate the interior design center:

12      (a)    The POM states that GH Investment was established "for the

13  purposes of making a loan to [GH Design] for the establishment of a home and

14  commercial design center that will offer interior design supplies and products, design

15  advice, and contracts for installation services in the City of Ontario, California";

16      (b)    The POM directs that GH Design can use the investor's capital

17  contribution only towards the building lease, employees of the center, administrative

18  overhead, marketing and promotion, office supplies, renovation costs, services and

19  maintenance, and inventory;

20      (c)    The business plan states that investor funds will be used to "lease,

21  renovate the space, and operate a 111,513 [square foot] home and commercial design

22  center";

23      (d)    The limited partnership agreement states that GH Investment's

24  business "shall be to make a loan to [GH Design] for purposes of establishing a home

25  and commercial design center and funding its subsequent operations"; and

26      (e)    The loan agreement between GH Investment and GH Design, in

27  the section "Mandatory Use of Proceeds," states that GH Design "agrees that the

28  proceeds of the Loan shall only be used for the development, construction and

1    operation of" the "home and commercial design center."

2        38.     GH Design leased warehouse space in Ontario, California for its

3    purported interior design center, for a space of 23,842 square feet at a rent of between

4    $8,583 and $9,108 per month, according to the true lease with the property's owner.

5        39.     A different, doctored version of GH Design's lease for this space,

6    however, was given to investors and the USCIS. The lease that was provided to

7    investors, which in turn was included in their visa applications submitted to USCIS,

8    falsely stated the lessor was Four Star Realty, a company controlled by Jean Chen.

9    The doctored lease also stated that the leased space was five times larger: 111,513

10    square feet at a rent of between $10,000 and $49,400 per month. This inflated square

11    footage was referenced in GH Investment's business plan, and used as a basis to

12    support the economic impact analysis and job creation numbers for the project.

13        40.     Edward Chen signed both the fabricated lease and real lease on behalf of

14    GH Design.

15        41.     In the annual reports on Form I-924A for the fiscal years ending

16    September 30, 2015 and September 30, 2016, Home Paradise represented to the

17    USCIS that the "111,513 square foot" "home and commercial design center" has

18    been in full operation since at least 2015, that it has created 345 jobs, and that it "is

19    currently in operations and the design office and retail space square footage was built

20    as originally projected."

21        42.     Home Paradise's Form I-924A for the fiscal year ending September 30,

22    2014 stated that the project had "335 [jobs] in progress," and the annual reports for

23    2015 and 2016 state that "345.3 jobs in total have been created through renovation

24    and operation" of the home and commercial design center.

25        43.     The interior design center project, however, is a sham. Rather than

26    being a functioning design center of over 111,000 square feet with nearly 350

27    employees, it is a less-than 25,000 square foot undecorated, half-empty warehouse

28    with some scattered random floor samples and one apparent employee, a receptionist.

44.     Edward Chen controls Home Paradise, GH Investment and GH Design. GH Investment's POM states that it was prepared by the general partner, Home Paradise, of which Edward Chen is the sole member and control person. The POM also identifies Edward Chen as the sole contact person for the issuer and the lead person in the management team. Edward Chen signed the limited partnership agreement and the loan agreement as the president of Home Paradise, the general partner. In addition, Edward Chen signed the subscription agreements, which identify him as Home Paradise's president. Further, Edward Chen owns and controls GH Design and signed the loan agreement and lease as its manager or CEO.

45.     Edward and Jean Chen also controlled the bank accounts of Home Paradise, GH Investment, GH Design, and Four Star Realty, as authorized signatories for such accounts.

**C.     The Golden Galaxy Offering**

46.     From November 2015 through April 2017, Edward and Jean Chen, Home Paradise and Golden Galaxy raised $13 million from 26 Chinese investors for a condominium project, through the sale of limited partnership interests in Golden Galaxy.

47.     Golden Galaxy provided the proceeds of the offering in the form of a preferred equity investment to the project company, Mega Home, to partially pay for the development, construction, and operation of the condominium complex project.

48.     According to the Golden Galaxy private placement memorandum ("PPM"), Golden Galaxy's preferred equity investment entitles it to receive interest from Mega Home at a rate of 4% annually rate, increasing to 5% after five years and to 6% after six years.

49.     Golden Galaxy's limited partners may, as determined by the general partner, Home Paradise, receive net cash flow distributions. According to the PPM, these distributions are to be made to limited partners before they are made to the general partner.

1    50.    Investors wired their $500,000 investments to Golden Galaxy's account
2  in the United States, where the monies were pooled with other Golden Galaxy
3  investors' funds.  An investor's funds could only be transferred to Mega Home upon
4  an investor's submission of an I-529 petition to the USCIS for temporary residency.
5  To date, all of the $13 million raised from investors has been transferred to Mega
6  Home.

7    51.    Separately, each investor paid Golden Galaxy an administrative fee in
8  the amount of approximately $50,000.  Under Golden Galaxy's limited partnership
9  agreement, Home Paradise, as the general partner, may use the administrative fees for
10  compensation, organizational, operational and marketing expenses.

11    52.    Although the Chens have raised $13 million for the Golden Galaxy
12  project, the maximum size of the offering, Home Paradise's Chinese affiliate's
13  website continues to promote the project.

14    53.    As part of the offering, prospective investors received the following
15  documents, which are included in the investors' visa applications to the USCIS:  (a) a
16  PPM; (b) a business plan; (c) an economic impact analysis report; (d) a subscription
17  booklet, including a subscription agreement signed by each investor and by Edward
18  Chen; (e) the Golden Galaxy Investment LP limited partnership agreement; and (f)
19  the administrative agreement among Home Paradise, Golden Galaxy and Mega
20  Home, which was signed by both Edward Chen and Jean Chen.

21    54.    The Golden Galaxy offering materials, including the subscription
22  agreement, the PPM, and the limited partnership agreement, reflect that the limited
23  partnership interests sold to investors are securities, that is, an investment of money,
24  in a common enterprise, with the expectation of profits derived solely through the
25  effort of others.  Indeed, the limited partnership agreement states that no limited
26  partner would be involved in the day-to-day management of the business.

27    55.    Golden Galaxy's offering documents provide that the investment
28  proceeds were to be used to develop, construct, and operate the Golden Galaxy

condominium complex, a 37,156 square feet luxury building with five floors and 80 apartment units in downtown Los Angeles:

      (a)    The PPM states that "the proceeds ... shall be used by [Mega Home] to develop, construct and thereafter sell the Project," and that Mega Home will use the proceeds it receives from Golden Galaxy "for the sole purpose of financing, in part, the development and construction of the Golden Galaxy Condominium";

      (b)    The business plan states that "EB-5 funds will be utilized for both the construction phase and operation phase of the Project"; and

      (c)    The administrative agreement between Home Paradise, Mega Home and Golden Galaxy states that Mega Home seeks to borrow up to $13 million "to use to partially cover the cost of construction and initial operation of the Project."

56.    Edward and Jean Chen controlled each of the entities related to the Golden Galaxy offering. The PPM identifies Home Paradise as the general partner of Golden Galaxy and Edward Chen as the managing member of Home Paradise. Both the Golden Galaxy PPM and subscription agreement direct that all inquiries be made to Edward Chen. Edward Chen signed the subscription agreement, limited partnership agreement, and administrative agreement as the president of Home Paradise. He also signed the administrative agreement in his capacity as the president of Golden Galaxy.

57.    Jean Chen signed the administrative agreement as the manager of Mega Home, and the PPM states that she controls Mega Home's day-to-day management and operations.

58.    Edward and Jean Chen also controlled the bank accounts of Home Paradise, Golden Galaxy and Mega Home, as authorized signatories for these accounts.

59.    Construction of the condominium complex appears to be ongoing.

1    **D.    The Misappropriation of Investor Funds**

2         **a.    The GH Investment offering**

3    60.    The GH Investment offering raised $9.5 million in capital contributions

4    from investors (not including administrative fees).

5    61.    The Chens misappropriated or misused at least $8.6 million, or 91%, of

6    those funds.  Specifically:

7              (a)    Jean Chen withdrew cash in the amount of $2,348,326, which

8    consisted of almost 25% of the offering proceeds.

9              (b)    Jean Chen wrote cashier's checks to herself totaling $1.35 million,

10   or approximately 14% of the offering proceeds.  Of that amount, Jean Chen has used

11   at least $1.24 million to purchase residential real estate in southern California.  Of the

12   three properties purchased with these funds, two are titled to GH Design and one is

13   titled to First Financial.  Nothing in any of the offering documents informs investors

14   that their proceeds might be used to purchase residential real estate in the name of

15   Chen-controlled entities or otherwise.

16             (c)    The Chens transferred over $4.93 million, or 52% of the amount

17   raised, to Four Star, US Grandhood, and Home Paradises LLC.  This includes a June

18   2015 transaction, in which the Chens transferred $463,470 of GH Design Investment

19   funds to Four Star Realty, then to Mega Home, from which they applied the funds

20   towards the purchase of title insurance for the land used for the Golden Galaxy

21   project.

22        **b.    The Golden Galaxy offering**

23   62.    As of the end of April 2017, Golden Galaxy had raised $13 million from

24   investors (not including administrative fees).

25   63.    Of that amount, the Chens have misappropriated and misused over $3.5

26   million to date.  Specifically:

27             (a)    Jean Chen wrote at least $2.7 million in cashier's checks to herself

28   and used those checks to, among other purposes, purchase foreclosed houses in

COMPLAINT                          13

1   southern California.  Title to seven properties was held in the name of GH Design,

2   and another is held in the name of First Financial.

3            (b)     Mega Home transferred $801,000 to Home Paradises LLC.  Jean

4   Chen then applied those funds toward purchasing real properties unrelated to the

5   Golden Galaxy offering.

6       64.     As of August 30, 2017, at least $2.7 million remains in Mega Home's

7   bank account.

8       65.     Between the two offerings, the Chens have misappropriated at least

9   $12.1 million—approximately $8.6 million from the GH Investment offering, and

10  approximately $3.5 million from the Golden Galaxy offering.

11      **E.     The Misrepresentations and Omissions**

12      66.     Defendants made materially false and misleading statements and

13  omissions to the GH Design and Golden Galaxy investors, and obtained investor

14  proceeds by means of these misstatements and omissions.

15      67.     The GH Investment offering materials (including the POM, the business

16  plan, and the subscription and limited partnership agreements) stated that investor

17  proceeds would be used to establish the interior design center, while the Golden

18  Galaxy offering materials (including the PPM, the business plan, and the subscription

19  and limited partnership agreements) stated that investor proceeds would be used to

20  develop and construct a condominium complex.

21      68.     Instead, more than 91% of the funds raised in the GH Design offering

22  and more than 27% of the funds raised in the Golden Galaxy offering were taken by

23  the Chens through cash withdrawals, the issuance of cashier's checks (in many cases,

24  used to purchase residential real estate), and the transfer of proceeds to Chen-

25  controlled entities.

26      69.     That their investment funds were being used for purposes other than

27  those disclosed in the offering materials would have been important to investors, as

28  the misuse and misappropriation of investor funds could jeopardize investors'

1    expected returns on their investment, as well as their expected immigration benefits.

2         70.    The GH Investment offering materials also represented that the home

3    design warehouse would be over 111,000 square feet, suggesting a substantially

4    larger project capable of generating the necessary jobs under the EB-5 program for

5    investors to obtain residency.  Instead, the actual leased space was less than 24,000

6    square feet.  The doctored lease also showed that a Chen entity was the lessor and

7    was to be paid up to more than five times the true rent under the real lease.

8         71.    This information would have been important to investors.  The fact that

9    the actual center was much smaller than reported made the project less likely to

10    generate the necessary income to provide the expected return on their investments, as

11    well making it less likely that the required number of jobs would be created by the

12    project, thereby jeopardizing investors' EB-5 visa applications.

13         72.    Edward Chen, Home Paradise, GH Investment and Golden Galaxy were

14    the makers of these false and misleading statements.  GH Investment and Golden

15    Galaxy are the issuers, and both the offering memoranda and business plans were

16    prepared in their names.  Home Paradise, as the general partner, had ultimate

17    authority over GH Investment's and Golden Galaxy's statements.  Edward Chen is

18    the president, CEO, and sole member of Home Paradise, and had ultimate authority

19    over the statements in the offering documents for both offerings.

20         73.    The Chens also received money from the GH Investment and Golden

21    Galaxy offerings by means of these false and misleading statements. The Chens

22    directly received money from both offerings in the form of cash, cashier's checks and

23    transfers to their controlled entities and to their entities' bank accounts, over which

24    the Chens had joint control.  The Chens also indirectly received monies from both

25    offerings through their controlled entities.  GH Investment and Golden Galaxy, as the

26    issuers, received investor funds wired to their bank accounts, of which Edward and/or

27    Jean Chen are authorized signatories.  GH Design and Mega Home, as the project

28    companies, received all of the investor funds in their bank accounts, which were

1  controlled by the Chens, while Home Paradise received the administrative fees
2  associated with both offerings.

3        **F.**     **Additional Fraudulent Conduct**

4        74.    As the architects of the GH Investment and Golden Galaxy offerings, the
5  Chens, individually and through their controlled entities, have engaged in and are
6  continuing to engage in additional fraudulent conduct to exploit the EB-5
7  immigration program in order to mislead and defraud investors.

8        75.    Edward and Jean Chen, and the entity defendants they control, have
9  misappropriated at least $12.1 million in investor funds from both offerings,
10  including as recently as April 2017.

11        76.    As the signatories on the accounts of their controlled entities through
12  which investor money was expended, the Chens misappropriated investor funds by
13  transferring them to affiliated entities, withdrawing the investor funds, or writing
14  cashier's checks to Jean Chen.  Significant amounts of the funds were used to
15  purchase residential real estate unrelated to the EB-5 offerings.

16        77.    In addition to misappropriating and misusing vast sums of investor
17  money, the Chens engaged in further deceptive conduct through the use of the fake
18  GH Investment lease.  The doctored lease for GH Investment's interior design center
19  project was provided to investors and in turn submitted to the USCIS, and the inflated
20  warehouse square footage in the lease was used as the basis for the economic impact
21  analysis of how many jobs the project could create for EB-5 investors to obtain
22  permanent residency.

23        78.    Edward Chen also submitted documents and reports to USCIS that
24  falsely represented the use of proceeds for both offerings and falsely certified that
25  Home Paradise operated a large commercial design center that created 345 jobs.
26  Submitting those reports created the false appearance that Home Paradise and the GH
27  Investment project were successful and in compliance with EB-5 regulations.

28

1

**G.     Defendants' Roles in Carrying Out the Fraud**

2      79.     At all relevant times, the Chens knowingly, recklessly and/or negligently
3  carried out their fraud in the GH Investment and Golden Galaxy offerings.  Their
4  scienter and negligence is imputed to the entity defendants they controlled.

5      80.     Edward Chen knew or was reckless in not knowing that he and his wife
6  were misappropriating and misusing investor funds to purchase residential real estate,
7  because the offering documents that his companies issued required investor proceeds
8  to be used for the interior design center and condominium complex.

9      81.     Edward Chen also knew or was reckless in not knowing that the lease
10 provided to GH Investment investors was fabricated because he signed both the fake
11 lease and the actual warehouse lease for a much smaller footprint and rental amount.

12     82.     Edward Chen, in turn, also knew or was reckless in not knowing that the
13 offering materials falsely misrepresented how the investor proceeds were going to be
14 used (and, in the case of the GH Investment offering, misrepresented the true nature
15 of the design center lease) because, as alleged above, these materials were submitted
16 and created on behalf of entities he and his wife controlled, the money was being
17 diverted to them or their controlled entities and he signed both the real and fake
18 leases.

19     83.     Jean Chen also had direct knowledge, or was reckless in not knowing of
20 the fraud.  With respect to the GH Investment offering, she controlled GH Design's
21 bank account, withdrew the cash and wrote the cashier's checks to herself.  She is the
22 sole control person of the fake lessor Four Star Realty, and made rent payments for
23 GH Design from Four Star Realty's account to the real lessor.  She thus knew or was
24 reckless or negligent in not knowing that she misappropriated investor money from
25 the interior design center project.

26     84.     Jean Chen was directly involved in the Golden Galaxy condominium
27 project and knew or was reckless in not knowing that she was misappropriating and
28 misusing investor funds in Mega Home's bank accounts to purchase residential real

1 | estate. Jean Chen was specifically named as the "manager" of the condominium
2 | project, and signed the administrative agreement on behalf of Mega Homes which
3 | was provided to investors and which states that such funds were to be used for the
4 | construction and operation of the condominium complex.

5 |      85.     The proposed defendants also acted negligently in committing this fraud.
6 | By taking millions of dollars of investor money for their own use, Edward and Jean
7 | Chen did not act with reasonable care. Edward Chen also acted unreasonably in
8 | submitting a doctored lease that was materially different than the actual lease that he
9 | signed for the GH Design space.

10 | **FIRST CLAIM FOR RELIEF**
11 | **Fraud in the Offer or Sale of Securities**
12 | **Violations of Section 17(a)(1) and (3) of the Securities Act**
13 | **(against all Defendants)**

14 |      86.     The SEC realleges and incorporates by reference paragraphs 1 through
15 | 85 above.

16 |      87.     Defendants engaged in a fraudulent EB-5 offering scheme. In two
17 | separate projects, defendants raised at least $22.5 million in funds from investors,
18 | representing their funds would be used for purposes of an interior design center and a
19 | condominium complex, and create necessary jobs under the EB-5 program. In
20 | reality, defendants misappropriated over $12.1 million of those funds, and used them
21 | for transfers to their related entities, cashier's checks, cash, and residential real estate
22 | purchases. Defendants created the false appearance that they were carrying out the
23 | investment projects described in the offering materials, whereas they were
24 | misappropriating investors' funds. Defendants also submitted false documentation to
25 | the USCIS and to investors, including a doctored lease for their design center.

26 |      88.     By engaging in the conduct described above, Defendants Edward Chen,
27 | Jean Chen, Home Paradise, GH Investment, GH Design, Golden Galaxy and Mega
28 | Home, and each of them, directly or indirectly, in the offer or sale of securities, and

by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly, employed devices, schemes, or artifices to defraud and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

89. Defendants Edward Chen, Jean Chen, Home Paradise, GH Investment, GH Design, Golden Galaxy and Mega Home, employed devices, schemes and artifices to defraud with scienter and, with scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

90. By engaging in the conduct described above, Defendants Edward Chen, Jean Chen, Home Paradise, GH Investment, GH Design, Golden Galaxy and Mega Home violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1) & 77q(a)(3).

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a)(2) of the Securities Act

### (against all Defendants)

91. The SEC realleges and incorporates by reference paragraphs 1 through 85 above.

92. Defendants, with scienter or negligence, also obtained money by means of untrue statements of material fact and by omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Specifically, they obtained investor funds by means of materially false and misleading representations to investors in the offering materials for the GH Investment and Golden Galaxy projects, which misrepresented the uses of proceeds and the sham design center. The purported design center was in reality a half empty warehouse a fifth of the size it was represented to be, with lower rent and fewer potential jobs that it could or did create.

1    93.    Both Edward and Jean Chen, as well as the entity defendants, directly

2  and indirectly, obtained money by means of materially false and misleading

3  representations and omissions.  The entity defendants received investor funds, either

4  directly through deposits from investors, or through transfers of investor funds to and

5  among the entity defendants' bank accounts.  Through the entity defendants' bank

6  accounts, which the Chens controlled, Edward and Jean Chen also obtained millions

7  of dollars from investors, both in the form of capital contributions as well as in

8  administrative fees.  In addition, through their misuse and misappropriation of

9  investor funds, Edward and Jean Chen obtained investor funds, in the form of cash,

10  cashier's checks, and residential real estate purchases, including through their other

11  affiliated entities.

12    94.    By engaging in the conduct described above, Defendants Edward Chen,

13  Jean Chen, Home Paradise, GH Investment, GH Design, Golden Galaxy and Mega

14  Home violated, and unless restrained and enjoined will continue to violate, Sections

15  17(a)(2) of the Securities Act, 15 U.S.C. §§ 77q(a)(2).

16                   **THIRD CLAIM FOR RELIEF**

17      **Fraud in the Connection with the Purchase and Sale of Securities**

18    **Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c)**

19                    **(against all Defendants)**

20    95.    The SEC realleges and incorporates by reference paragraphs 1 through

21  85 above.

22    96.    Defendants engaged in a fraudulent EB-5 offering scheme.  In two

23  separate projects, defendants raised at least $22.5 million in funds from investors,

24  representing their funds would be used for purposes of an interior design center and a

25  condominium complex, and would create the necessary number of jobs under the EB-

26  5 program.  In reality, defendants misappropriated over $12.1 million of those funds,

27  and used them for transfers to their related entities, cashier's checks, cash, and

28  residential real estate purchases.  Defendants created the false appearance that they

were carrying out the investment projects described in the offering materials, whereas they were misappropriating investors' funds. Defendants also submitted false documentation to the USCIS and to investors, including a doctored lease for their design center.

97. By engaging in the conduct described above, Defendants Edward Chen, Jean Chen, Home Paradise, GH Investment, GH Design, Golden Galaxy and Mega Home, and each of them, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

98. Defendants Edward Chen, Jean Chen, Home Paradise, GH Investment, GH Design, Golden Galaxy and Mega Home, with scienter, (a) employed devices, schemes, or artifices to defraud; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, by the conduct described in detail above.

99. By engaging in the conduct described above, Defendants Edward Chen, Jean Chen, Home Paradise, GH Investment, GH Design, Golden Galaxy and Mega Home violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a) & 240.10b-5(c).

## FOURTH CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act

### and Rule 10b-5(b) Thereunder

### (against Defendants Edward Chen, Home Paradise, GH Investment

### and Golden Galaxy)

100. The SEC realleges and incorporates by reference paragraphs 1 through

1  | 85 above.

2  |    101.   Defendants made materially false and misleading representations to

3  | investors in the offering materials for their two EB-5 offerings, misrepresenting the

4  | use of proceeds and the sham design center.  In reality, defendants misappropriated

5  | over $12.1 million of the investors' funds, and used them for transfers to their related

6  | entities, cashier's checks, cash, and residential real estate purchases.  The design

7  | center was in reality a half empty warehouse a fifth of the size it was represented to

8  | be, with lower rent and fewer potential jobs that it could or did create.

9  |    102.   By engaging in the conduct described above, Defendants Edward Chen,

10 | Home Paradise, GH Investment, and Golden Galaxy, and each of them, directly or

11 | indirectly, in connection with the purchase or sale of a security, by the use of means

12 | or instrumentalities of interstate commerce, of the mails, or of the facilities of a

13 | national securities exchange, made untrue statements of a material fact or omitted to

14 | state a material fact necessary in order to make the statements made, in the light of

15 | the circumstances under which they were made, not misleading.

16 |    103.   By engaging in the conduct described above, Defendants Edwards Chen,

17 | Home Paradise, GH Investment and Golden Galaxy violated, and unless restrained

18 | and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. §

19 | 78j(b), and Rules 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

20 |                        **PRAYER FOR RELIEF**

21 |        WHEREFORE, the SEC respectfully requests that the Court:

22 |                                **I.**

23 |        Issue findings of fact and conclusions of law that defendants committed the

24 | alleged violations.

25 |                                **II.**

26 |        Issue orders, in forms consistent with Rule 65(d) of the Federal Rules of Civil

27 | Procedure, temporarily, preliminarily and permanently enjoining:  (1) defendants

28 | Edward Chen, Jean Chen, Home Paradise, GH Investment, GH Design, Golden

COMPLAINT                              22

1    Galaxy and Mega Home, and their officers, agents, servants, employees, and
2    attorneys, and those persons in active concert or participation with any of them, who
3    receive actual notice of the orders by personal service or otherwise, and each of them,
4    from violating Section 17(a) of the Securities Act, 15 U.S.C. §77q(a), and Section
5    10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5(a) and (c)
6    thereunder, 17 C.F.R. § 240.10b-5(a) and (c); and (2) defendants Edward Chen,
7    Home Paradise, GH Investment, and Golden Galaxy, and their officers, agents,
8    servants, employees, and attorneys, and those persons in active concert or
9    participation with any of them, who receive actual notice of the orders by personal
10   service or otherwise, and each of them, from violating Section 10(b) of the Exchange
11   Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

12                                              **III.**

13        Issue orders, in forms consistent with Rule 65(d) of the Federal Rules of Civil
14   Procedure, permanently enjoining defendants Edward Chen, Jean Chen, Home
15   Paradise, GH Investment, GH Design Group, Golden Galaxy, and Mega Home, and
16   their officers, agents, servants, employees, attorneys, and those persons in active
17   concert or participation with any of them, who receive actual notice of this Order, by
18   personal service or otherwise, and each of them, be and hereby are permanently
19   restrained and enjoined from, directly or indirectly, participating in the offer or sale
20   of any security which constitutes an investment in a "commercial enterprise" under
21   the United States Government EB-5 visa program administered by USCIS, including
22   engaging in activities with a broker, dealer, or issuer, or a Regional Center designated
23   by the USCIS, for purposes of issuing, offering, trading, or inducing or attempting to
24   induce the purchase or sale of any such EB-5 investment.

25                                              **IV.**

26        Issue in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order
27   and a preliminary injunction freezing the funds and assets of defendants and their
28   affiliates; appointing a receiver over the entity defendants and the individual

1   defendants' affiliated entities; prohibiting each of the defendants from destroying
2   documents; ordering accountings by each of the defendants; and ordering expedited
3   discovery.

4                                        **V.**

5          Order defendants to disgorge all funds received from their illegal conduct,
6   together with prejudgment interest thereon.

7                                       **VI.**

8          Order defendants to pay civil penalties under Section 20(d) of the Securities
9   Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §
10  78u(d)(3).

11                                      **VII.**

12         Retain jurisdiction of this action in accordance with the principles of equity and
13  the Federal Rules of Civil Procedure in order to implement and carry out the terms of
14  all orders and decrees that may be entered, or to entertain any suitable application or
15  motion for additional relief within the jurisdiction of this Court.

16                                     **VIII.**

17         Grant such other and further relief as this Court may determine to be just and
18  necessary.

19
20
21  Dated: September 20, 2017

                                    /s/ Donald W. Searles
22                                  _____
                                    Donald W. Searles
23                                  Attorney for Plaintiff
                                    Securities and Exchange Commission
24
25
26
27
28

COMPLAINT                             24