NICOLAS MORGAN (SB# 166441)
nicolasmorgan@paulhastings.com
THOMAS A. ZACCARO (SB# 183241)
thomaszaccaro@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendant
JEAN CHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD CHEN, JEAN CHEN, HOME PARADISE INVESTMENT CENTER LLC, GH INVESTMENT LP, GH DESIGN GROUP, LLC, GOLDEN GALAXY LP, MEGA HOME, LLC,<br><br>Defendant. | CASE NO. 2:17-cv-06929-PA-JEM<br><br>**ORDER APPROVING:**<br><br>**SETTLEMENT AGREEMENT BETWEEN RECEIVER AND FIRST FINANCIAL INVESTMENT GROUP, LLC**<br><br>**[STIPULATION APPROVING SETTLEMENT AGREEMENT FILED CONCURRENTLY HEREWITH]**<br><br>**[No Hearing Required]**<br>Judge:  Hon. Percy Anderson<br>Courtroom:  9A |

[PROPOSED] ORDER APPROVING
SETTLEMENT AGREEMENT BETWEEN
RECEIVER AND FIRST FINANCIAL
INVESTMENT GROUP, LLC

1
2    The Court having reviewed the concurrently filed Stipulation Approving
3 Settlement Agreement, and for good cause appearing therefore,
4    IT IS HEREBY ORDERED THAT:
5    The Receiver is authorized to enter into the Settlement Agreement & Mutual
6 Release in **Exhibit A** to this Order (the "Settlement Agreement").
7
8
9 **IT IS SO ORDERED**
10
11 DATED: October 5, 2018    _____
12                              Hon. Percy Anderson
                              UNITED STATES DISTRICT JUDGE
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 1 -    [PROPOSED] ORDER APPROVING
         SETTLEMENT AGREEMENT BETWEEN
         RECEIVER AND FIRST FINANCIAL
         INVESTMENT GROUP, LLC

# EXHIBIT A

## SETTLEMENT AGREEMENT & MUTUAL RELEASE

I.    PARTIES

This Settlement Agreement and Mutual Release (hereinafter "Settlement Agreement") is made by and between First Financial Investment Group, LLC ("FFIG") and GH Design Group, LLC ("GHD") by and through its Court appointed Receiver Robert Mosier.

FFIG and GHD may be referred to collectively throughout this Agreement and Release as the "Agreeing Parties."

II.    RECITALS

A.    On September 20, 2017 the Securities and Exchange Commission filed an action Case No. CV 17-6929 PA (JEMx) United States District Court Central District of California against Edward Chen, Jean Chen (collectively "Chen Defendants"), Home Paradise Investment Center LLC, GH Investment LP, GH Design Group, LLC, Golden Galaxy LP, and Mega Home, LLC.

B.    On September 20, 2017 the Court entered a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction ("TRO") Should Not Be Granted that preliminarily restrained and enjoined Defendants from transferring any funds, assets, securities, claims or other real or personal property wherever located, of any one of the Defendants, or their subsidiaries or affiliates, owned by, controlled by, managed by or in the possession or custody of any of them.  Although FFIG was not named as a party, it was listed as an affiliate of one of the Defendants.  FFIG's parent's company, First Financial Management Group, LLC ("FFMG"), was not included in the TRO.

C.    The SEC and the Chen Defendants ultimately agreed to a receivership and that Robert Mosier be appointed as permanent receiver for the estates of GH Investment LP and GHD with authority to proceed with liquidation of the real property.

D.    Wanxin Tong is the sole stockholder of Beijing Shixing Internet Service Company, Ltd. ("BSIS") that in turns is the sole member of FFMG, which is the sole member and managing member of FFIG.

E.    On January 3, 2017, BSIS became a bona fide purchaser for value of FFIG when it purchased FFMG, the sole managing member of FFIG. A copy of BSIS's January 3, 2017, purchase agreement was provided to the Receiver.

F.    At the time of BSIS's purchase of FFMG, FFIG contends its assets of $1.4 million were roughly equal to its liabilities.

G.    After BSIS's purchase of FFMG, FFIG borrowed approximately $1.7 million from individual investors ($500,000 of which was repaid), netting $1.2 million of new cash to FFIG in 2017. The promissory notes were all executed by Mr. Tong, as the control person of FFIG after January 3, 2017, and by Mr. Chen prior to that time. Proof of these transactions was provided to the Receiver.

H.    In addition to the approximately $1.2 million borrowed (net of repayments) from individuals,

during the first nine months of 2017, FFIG generated at least $524,700 in cash from the sale of three houses.

I.      Pursuant to the TRO, the Receiver seized all assets belonging to FFIG.  This included three banks accounts, and two real estate properties.

J.      On February 15, 2017, FFIG purchased the house located at 15177 Hornell (the "Hornell Property") for $418,000 and titled it in FFIG's name. Mega Home provided 100% of the funds for the Hornell Street purchase as the payoff of its $400,000 note, plus 5% interest, issued to FFIG approximately one year earlier.

K.      On February 22, 2017, a house located at 942 Ruthcrest Avenue (the "Ruthcrest property") was purchased by FFIG with funds from GHD for approximately $361,500, and the title was vested in the name of FFIG.

L.      The parties agree that GHD owes FFIG $787,000 and FFIG owes GHD $411,500 for a net to FFIG of $375,500.  See Attachment 1.

M.      Receiver obtained control of the following three FFIG Bank accounts at Cathay Bank and consolidated them into one receivership account at EastWest Bank (account number …6686):

| Account number 0020333927 | $   1,629.39 |
| Account number 0020333820 | $334,196.24 |
| Account number 0020333951 | $287,307.08 |

The receiver did not take control of the following FFMG bank accounts at Cathay Bank.

| Account number 0020333757 | $   3,089.62 |
| Account number 0020333935 | $   3,000.80 |

N.      Receiver used some of these proceeds for payment of expenses on FFIG assets.  The net amount in FFIG's sole East West Bank account as of October 3, 2018 is $587,748.53.

### III.   CONSIDERATION

NOW, THEREFORE, in consideration of the promises and covenants contained herein, it is mutually agreed by and between The Agreeing Parties, and each of them, that they will provide the following consideration to each other party (ies) as specified herein.

    1.    **GENERAL, MUTUAL RELEASE.**

(a)    GHD hereby fully and forever, generally and specifically, releases and discharges FFIG from any and all claims, demands, actions, rights, causes of action, obligations, liens, damages, judgments, indemnities, subrogations, duties, controversies or any liability or claim of any nature, character or description, whether at law or in equity, whether or not now known, suspected or claimed, that GHD ever had or now have or might in the future have, against the FFIG by reason of any act, failure to act, cause, matter or event arising out of, or in any way relating to the issues described hereinabove in the recitals.

(b) FFIG hereby fully and forever, generally and specifically, releases and discharges GHD from any and all claims, demands, actions, rights, causes of action, obligations, liens, damages, judgments, indemnities, subrogations, duties, controversies or any liability or claim of any nature, character or description, whether at law or in equity, whether or not now known, suspected or claimed, that FFIG ever had or now have or might in the future have, against Plaintiff by reason of any act, failure to act, cause, matter or event arising out of, or in any way relating to the issues described hereinabove in the recitals.

2. **SETTLEMENT**

In exchange for the consideration and waivers described in paragraphs (a)-(b) above, it is agreed that GHD by and through its appointed Receiver Robert Mosier shall:

- A. Pay the sum of $375,000 to FFIG;
- B. Wire transfer the remaining balance in FFIG's East West Bank account (…6686) to an account to be designated by FFIG;;
- C. Release the Hornell and Ruthcrest Properties that are titled under FFIG;
- D. Stipulate to an order authorizing Cathay Bank to release FFMG's funds to Mr. Tong;
- E. Cooperate and make its best efforts to facilitate the above considerations.

This Settlement Agreement is strictly contingent on the Court approving this agreement.

3. **COVENANT NOT TO SUE**

The Agreeing Parties covenant and agree that they have not, and that they shall not, bring any other claim, action, suit or proceeding against the other regarding the matters settled, released and dismissed hereby.  The Agreeing Parties further covenant and agree that this Agreement is a bar to any such claim, action, suit or proceeding.

4. **MUTUAL RELEASES**

Except as to the obligations contained in this Agreement, the Agreeing Parties, on behalf of themselves and their respective heirs, executors, administrators, spouses, families, agents, servants, employees, employers, officers, partners, principals, owners, stockholders, directors, representatives, affiliates, joint venturers, and assigns hereby irrevocably and unconditionally release and forever discharge each other and each of their respective heirs, executors, administrators, spouses, families, agents, servants, employees, employers, officers, partners, principals, owners, stockholders, directors, representatives, insurers, attorneys, experts, affiliates, joint venturers, franchisers and assigns from any and all claims, demands, complaints (administrative and civil), causes of actions, obligations, liens, damages, losses, costs, attorney's fees, and expenses of every kind and nature, at law or in equity, direct or derivative, known or unknown, fixed, liquidated or contingent, tort, contract, statutory or mixed, which either of them ever had, may now have or may hereafter have against each other by reason of any act or omission, matter, cause or thing arising out of or connected with matter referenced in the recitals, including, without limitation, any and all claims for incidental, consequential damages therefrom, claims for property damage, personal or bodily injury, emotional distress, mental anguish or other economic loss,  The release specified hereinabove does not release any party other than the Agreeing Parties.

IV.     OTHER MATERIAL TERMS & CONDITIONS

   1.     WAIVER OF CIVIL CODE SECTION 1542

The Agreeing Parties fully understand that they may have additional unknown claims or may have suffered other damages that are presently unknown to them, which arise out of or relate to the instant matter referenced hereinabove in the Recitals and that presently unknown claims may arise, develop or be discovered in the future.  However, the Agreeing Parties acknowledge that this Settlement Agreement is a full and final, general release of all unknown and unanticipated injuries, damages and claims arising out of or pertaining to the instant matter referenced hereinabove in the Recitals and the matters released above, as well as to those not known or disclosed.  The Agreeing Parties waive all rights or benefits which they now have, or in the future may have, under the terms of Section 1542 of the California *Civil Code*, with regard to the instant matter referenced hereinabove in the Recitals and the matters released above. California *Civil Code* section 1542 reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO THE CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST
> IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE
> RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE
> MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE
> DEBTOR.

   2.     WAIVER OF MISTAKE OF FACT OR LAW

In entering this Settlement Agreement, the Agreeing Parties, and each of them, assume the risk of any mistake.  If any party should subsequently discover that any fact relied upon by it in entering into this Settlement Agreement was untrue, or that its understanding of the facts or of the law was incorrect, such party shall not be entitled to any relief in connection therewith, including, without limitation, on the generality of the foregoing, any alleged right or claim to set aside or rescind this Settlement Agreement. This Settlement Agreement is intended to be and is final and binding upon and among the Agreeing Parties regardless of any mistake of fact or law or any other circumstance whatsoever.

   3.     REPRESENTATIONS AND WARRANTIES BY THE AGREEING PARTIES

The Agreeing Parties represent and warrant that: (1) they are authorized to compromise and settle all of the claims which are the subject of this Settlement Agreement; and (2) they have not sold, transferred, conveyed, signed, hypothecated, or otherwise disposed of any claims, rights, demands, actions and causes of action which are the subject of the instant matter referenced hereinabove in the Recitals or the Settlement Agreement.

   4.     INTEGRATION CLAUSE

This Settlement Agreement contains the sole, complete, and entire Settlement Agreement and understanding of the Agreeing Parties concerning the matters contained in the Release above, and may not be altered, modified, or changed in any manner except by a writing duly executed by the Agreeing Parties. No statements, promises or representations have been made by any party to another or relied upon and no

consideration has been, or is, offered, promised, expected or held out, other than as stated in this Settlement Agreement.  No party is relying on any representations other than those expressly set forth herein.  There are no oral or written collateral agreements. All prior discussions and negotiations have been and are, merged and integrated into, and superseded by, this Settlement Agreement.  No breach of any provision hereof can be waived unless in writing. Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.

5. **FEES & COSTS**

The Agreeing Parties agree that each shall bear its own costs and attorneys' fees related to the instant matter referenced hereinabove in the Recitals, including but not limited to any fees and costs sought in any motion and any claim for statutory attorneys' fees and costs.  Each party waives any right to fees and/or costs that the party may otherwise be entitled to.

If, however, any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Settlement Agreement, the prevailing party shall be entitled to reasonable costs and attorneys' fees and costs in bringing, prosecuting, and/or defending such action.

6. **CALIFORNIA LAW**

This Settlement Agreement shall be deemed to have been executed and performed within the State of California, and the rights and obligations of the Agreeing Parties hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of California. Venue for any dispute concerning this Agreement shall be the District Court of California, Central District Western Division..

7. **BENEFIT OF COUNSEL**

The Agreeing Parties expressly state that they have the opportunity to consult with counsel concerning all portions of this Settlement Agreement.

The Agreeing Parties specifically acknowledge and agree that they have received no advice from the other party's attorney(s) and have never been represented by the other party's attorney(s).

8. **JOINT PRODUCT**

This Settlement Agreement is the product of bargained for arms-length negotiations between the Agreeing Parties and/or their respective counsel.  This Settlement Agreement is the joint product of all of the Agreeing Parties and/or their respective counsel and, therefore, any construction of the intent of the Agreeing Parties hereto or language hereof to be made by a court of law shall not be construed individually against any of the Agreeing Parties hereto.

9. **COURT APPROVAL**

The Agreeing Parties agree that this Settlement Agreement is being entered into in good faith by

all Parties and without fraud, coercion, duress or undue influence.  However, this Settlement Agreement is still subject to the Court's approval in Case No. CV 17-6929 PA (JEMx).

10. **NO ADMISSION OF LIABILITY**

The Agreeing Parties agree that the execution of this Settlement Agreement is a compromise settlement of disputed claims, or potential disputed claims, and that the furnishing of consideration under the terms of this Settlement Agreement shall not be deemed or construed as an admission, evidence or indication, in any degree, of liability or responsibility by FFIG or GHD at any time for any purpose, nor any concession by Agreeing Parties regarding the merits of this dispute.  It is further agreed and understood that this Settlement Agreement is being entered into solely for the purpose of avoiding further expense and inconvenience from prosecuting or defending against any and all of the claims by Agreeing Parties, or any claims related to such, whether asserted or not, and may not be referred to in this matter or any other litigation, whether or not arising from the same facts and transactions of the instant matter referenced hereinabove in the Recitals, except for the purpose of enforcing the items of this Settlement Agreement.

11. **EXECUTION IN COUNTERPARTS**

This Settlement Agreement may be executed in counterparts which, when taken together, shall constitute one original Settlement Agreement.  An executed signature page received via facsimile or e-mail transmission shall be legally effective as the original.

12. **LEGAL CAPACITY**

Each undersigned represents and warrants that he has the right, power, legal capacity and authority to enter into and perform the obligations under this Settlement Agreement on his own behalf and on behalf of anyone or any entity he represents except that the Receiver will require Court approval as set forth in paragraph IV(9) above.

13. **NECESSARY ACTS**

Each undersigned represents and warrants that s/he shall do all acts and execute and deliver all documents necessary, convenient or desirable to effect all provisions of this Settlement Agreement.

Upon receipt of the executed Settlement Agreement and approval of this Settlement Agreement at the Federal District Court, Receiver shall promptly forward to FFIG's counsel the settlement check, and if not already provided, the Settlement Agreement executed by the Receiver on behalf of GHD.

14. **GENDER**

The use of the masculine gender herein is to be construed to include the feminine and neuter where applicable.

15. **CAPTIONS AND INTERPRETATIONS**

Titles or captions contained herein are inserted as a matter of convenience and for reference, and no way define, limit, extend or describe the scope of this Agreement or any provision thereof. Whenever the context hereof shall so require, the singular shall include the plural, and male gender shall include the female gender and the neuter, and vice-versa. Furthermore, no provision in this Agreement is to be interpreted for or against any party because that party or his legal representative drafted such provision.

16. **SEVERANCE**

If any provision of this Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, such provision will be deemed to be severed and deleted from the Agreement as a whole, and neither such provision nor its severance and deletion shall in any way affect the validity of the remaining provisions of the Agreement.

17. **ACKNOWLEDGMENT & EXECUTION**

The Agreeing Parties hereby acknowledge that this Settlement Agreement consists of eight (8) pages and that, prior to executing this Settlement Agreement, they have received and reviewed each of these pages.

Further, the Agreeing Parties hereby acknowledge that, for purposes of enforcement or interpretation of this Agreement, any facsimile or other copies of original signatures shall be deemed originals and no production of original signatures shall be necessary.

**EACH OF THE UNDERSIGNED CERTIFIES THAT THEY HAVE CAREFULLY READ THIS AGREEMENT IN ITS ENTIRETY AND THE CODE SECTIONS REFERRED TO HEREIN, THAT THE SAME HAS BEEN EXPLAINED TO HIM/HER BY HIS/HER ATTORNEYS AND THAT HE/SHE UNDERSTANDS ITS CONTENTS AND EXECUTES IT FREELY AND VOLUNTARILY.**

DATED: Oct, 4, 2018. , 2018

_____
First Financial Investment Group, LLC
BY: Wanxin Tong
ITS: Manager

DATED: OCTOBER 3, 2018 , 2018

_____
GH Design Group, LLC
BY: Robert Mosier
ITS: Receiver